In the Matter of an Application by IDA J. AMANN, MARY BARRY, ANNA M. CARVER and Thirty-six Others, Petitioners, Appellants, for an Order under Article 78, Civil Practice Act, against JAMES E. FINEGAN, President, PAUL J. KERN and Another, Commissioners, Constituting the Civil Service Commission for the City of New York, and WILLIAM A. COURTNEY, President, Mrs. JAMES WHITFORD and Others, Members Constituting the Board of Child Welfare for the City of New York, Respondents.

First Department, February 18, 1938.

*Albert de Roode,* for the appellants.

*Henry J. Shields* of counsel [*Jeremiah M. Evarts* with him on the brief; *William C. Chanler, Corporation Counsel*], for the respondents.

CALLAHAN, J. Petitioners hold positions as "social investigators" in the board of child welfare, having been appointed through competitive examinations. Their positions are included in part I of the competitive classification of the municipal civil service commission, known as the "ungraded service."

On June 30, 1937, the board of estimate and apportionment passed a resolution approving the transfer of funds to establish appropriations for various "social investigators" in the board of child welfare.

Included in this resolution were the parenthetical title "(senior supervisor)," "(supervisor)" and "(assistant supervisor)," following the designation "social investigator." The civil service commission objected to payment of salaries to "social investigators,"

against budgetary appropriations containing such parenthetical designations. Accordingly, on August 20, 1937, the board of estimate and apportionment passed an amended resolution fixing the same salaries, but omitting the parenthetical titles.

On August 26, 1937, the board of child welfare a located the positions so provided to some of the petitioners, and allotted other budgetary items to others, thus effecting increases in the salaries of all petitioners. The increases ranged from $240 to $860 per year. Only seven of the petitioners, however, received increases exceeding $360 per year.

Payrolls containing the increased salaries were submitted to the civil service commission for the month of September, but the commission declined to certify same, stating that they believed that the increases constituted promotions in violation of the Civil Service Law and Rules. They based this determination upon the ground that the parenthetical titles in the rescinded resolution of the board of estimate and apportionment of June 30, 1937, amounted, in effect, to a promotion.

Later, on October 18, 1937, the board of child welfare rescinded all allowances of over $360 per year, and the commission agreed to certify payrolls where the increases did not exceed such sum, but continued their refusal to certify any payrolls showing increases beyond that sum.

The principal question involved is whether those petitioners who were granted increases beyond $360 are entitled to be paid at the higher rate between August 26 and October 18, 1937.

There never has been any official classification by the municipal civil service commission of any positions such as " senior supervisor," " supervisor," or " assistant supervisor " of social investigators in the board of child welfare.

There is no statement of fact in the answer or proof in the record that any of the petitioners, during the periods to which the payrolls involved related, actually performed any duties ordinarily performed by " senior supervisor," or any other service of a supervisory nature. Petitioners were listed on the disputed payrolls as " social investigators," and we are determining their rights as such to moneys appropriated for that position. But, even if it did appear that the department head had temporarily assigned an investigator to supervise the work of others, such assignment would not appear to violate the civil service regulations under the present circumstances.

Whatever might have been the effect of the inclusion of parenthetical titles in the first resolution adopted by the board of estimate and apportionment, if such resolution had been acted

on by the board of child welfare, the elimination of those titles from the amended resolution before allocation of petitioners to the positions created thereby removed any such question from the case.

While it is true that the letter of the executive secretary of the board of child welfare to the board of estimate and apportionment, seeking the amended resolution, showed that the increases were being asked for to effect what the writer called "promotions," there was, of course, no promotion accomplished in fact or in law by a communication of this sort. Nor do we find that under the Civil Service Law or Rules any promotion would be effected by a mere increase in salary as to positions in the ungraded service.

Section 16 of the Civil Service Law provides: " For the purposes of this section an increase in the salary or other compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion."

Subdivision 2 of rule V of the Rules of the Municipal Civil Service Commission provides: " The positions in each Part, except Part I, shall for the purposes of salary and promotion be arranged in grades as designated in the Classification."

The position of social investigator, being in part I, is thus excepted from arrangement in grades for the purpose of salary. As to an ungraded position, an increase in pay cannot bring the new salary beyond any grade limit so as to effect a promotion. (*People ex rel. Stokes* v. *Tully*, 108 App. Div. 345.)

Promotion examinations may be ordered in the ungraded service (Rules of Municipal Civil Service Commission, rule 5. See § X, ¶ 6), but classification would be a preliminary step in order to create such positions as " senior supervisor," " supervisor " or " assistant supervisor." No such classification having been made in the board of child welfare, there was no basis laid for holding promotion examinations. Classifications, in order to be effective, must first receive the approval of the State Civil Service Commission.

The claim of the commission that a classification of supervisory positions in this office was contemplated and that the increases in salary involved herein might circumvent such intention, is without weight. The rights of the petitioners, legally created, cannot be affected by any intended action of the commission.

The heads of departments of the city government have power to create positions and designate the duties therefor. (Greater New York Charter, § 1543.) The fixation of salaries and the appropriation of moneys for the payment thereof are the duties of the legislative body of the city. (Greater New York Charter, §§ 56 and 226.) Where positions have been legally created, and

the salaries therefor properly appropriated, persons appointed to such positions under existing Civil Service Law and Regulations are entitled to the sum appropriated. There is no valid reason why the civil service commission should decline to certify proper payrolls for such appointees, at least without showing that the work being performed violates some existing statutory provision or rule governing the civil service as applied to the positions involved.

The adoption by the board of child welfare on October 18, 1937, of the resolution limiting all salary increases to $360 would seem to be a proper exercise of the powers of that board. We assume that there were appropriate budgetary lines to permit the allocations thus made. There is nothing to show, however, that the resolution of that date had or was intended to have any retroactive effect.

We make no determination as to payrolls after October 18, 1937.

The order should be reversed, with twenty dollars costs and disbursements, and the motion granted to the extent of directing the municipal civil service commission to attach to payrolls from August 26 to October 18, 1937, the certificate requisite under section 20 of the Civil Service Law, at salary rates provided for petitioners in accordance with the resolution of the board of estimate and apportionment of August 20, 1937, and directing the board of child welfare to provide and submit payrolls accordingly, otherwise denied.

O'MALLEY, TOWNLEY and COHN, JJ., concur; MARTIN, P. J., dissents and votes for affirmance.

MARTIN, P. J. (dissenting). The fact that the board of child welfare, when originally requesting the board of estimate and apportionment to grant increases under the headings of supervisory titles, represented that the increased compensation was for the purpose of promoting certain individuals, and made a like representation in requesting that the resolution granting such increases be modified by omitting the supervisory titles, compels the inference that the board of child welfare was attempting to circumvent the contemplated classification of the supervisory positions of that department.

The order should be affirmed.

Order reversed, with twenty dollars costs and disbursements, and the motion granted to the extent stated in the opinion. Settle order on notice.