In the Matter of the Application of KATHLEEN E. BRENNAN, HELEN M. BYRON, ANN COMTOIS and Twenty-Three Others, Petitioners, for an Order against PAUL J. KERN, President, and Others, Commissioners, Constituting the Municipal Civil Service Commission for the City of New York, Respondents.*

Supreme Court, Special Term, New York County, November 8, 1939.

---

* Affd., 258 App. Div. 1049.

*Albert DeRoode,* for the petitioners.

*William C. Chanler, Corporation Counsel [Samuel J. Silverman* of counsel], for the respondents.

MILLER, J.   Prior to December 2, 1938, petitioners were serving under the title of " Social Investigator " in the department of welfare of the city of New York, having been appointed to their positions after competitive examination.   The position of " Social Investigator " was at the time in the ungraded service and the salaries of petitioners could, therefore, be validly increased and their duties and responsibilities enlarged without a promotion examination.   (*Matter of Amann* v. *Finegan,* 253 App. Div. 364.) Petitioners were and are receiving salaries in excess of $1,800 per annum, up to but not including $2,400 per annum.   On or about December 2, 1938, a resolution of the municipal civil service commission went into effect *which struck the title of " social investigator " from the ungraded service* and classified and graded the social service in the department of welfare into six grades, the first two of which are described as follows:

" Grade 1, Social Investigator, to but not including $1800 per annum.

" Grade 2, Assistant Supervisor, Medical Social Worker, Home Economist, $1800 to but not including $2400 per annum."

Petitioners claim that as a result of the grading and classification effected by said resolution they have a right to the title of " Assistant Supervisor, Grade 2," and they accordingly ask that the municipal civil service commission record them as such upon the official roster which the Commission is obliged to maintain under section 19 of the Civil Service Law.

It is well settled that a classification or reclassification of positions by a civil service commission cannot adversely affect the positions

or salaries of the then incumbents of the positions involved. (*Matter of Fornara* v. *Schroeder*, 261 N. Y. 363, 368; *Matter of Sugden* v. *Partridge*, 174 id. 87; *Matter of Sandford* v. *Finegan*, 276 id. 70, 73; *Matter of Cook* v. *Kern*, 278 id. 195, 199; *Matter of Kinsella* v. *Kern*, 168 Misc. 847; affd., 254 App. Div. 834; leave to appeal denied, Id. 834; 278 N. Y. 739; Opinions of Attorney-General, 24 State Dept. Rep. 383.) No statute or resolution of the municipal civil service commission purporting to " cover in " the then incumbents of the positions is necessary to protect them, and any attempt of a civil service commission by resolution or otherwise to take away or impair their rights to their positions and to the salaries received by them would be illegal. In *Matter of Kinsella* v. *Kern* (*supra*) the position of the petitioner, which had theretofore been in the non-competitive class with undefined duties, was removed from that class by resolution of the municipal civil service commission, which also defined the duties of the position. The commission required the petitioner to take a qualifying examination in order to retain his position, which he failed to pass. The court held that the commission had no right to require the petitioner to take or pass a qualifying examination, and accordingly ordered the commission to rescind its direction to the department of health to terminate the petitioner's employment. In *Matter of Sandford* v. *Finegan* (*supra*, p. 73) the Court of Appeals, in discussing the rights of a person occupying a position with no definite tenure, said " he would be continued in the position without taking an examination after the position had been placed in the competitive class. (*Matter of Fornara* v. *Schroeder*, 261 N. Y. 363.)" As the court pointed out in *Matter of Kinsella* v. *Kern* (*supra*, p. 848): " It was only because the petitioner in the *Sandford* case had been appointed for a definite term, which had expired, that the Court of Appeals relied upon an act of the Legislature which conferred tenure of office during good behavior."

The question still remains whether petitioners, though entitled to retain their present positions and salaries notwithstanding the resolution of the municipal civil service commission grading and classifying their positions in the social service and changing the titles thereof, have the right to the title of " Assistant Supervisor, Grade 2," which is the new title for positions carrying the salaries received by petitioners. It seems clear that if the resolution had classified positions in the social service receiving salaries in excess of $1,800 and up to $2,400 per annum under the title of " Social Investigator, Grade 2," petitioners, who had passed competitive examinations for the position of " Social Investigator," and who were receiving at the time the resolution went into effect salaries in

excess of $1,800 and up to $2,400 per annum, would have the right to the title of "Social Investigator, Grade 2." The mere fact that the title assigned to Grade 2 by the commission is "Assistant Supervisor," instead of that of "Social Investigator," would not change the situation or affect the rights of petitioners. In *Matter of Amann* v. *Finegan* (*supra*, p. 367) the court says:

"Subdivision 2 of rule V of the Rules of the Municipal Civil Service Commission provides: 'The positions in each Part, except Part I, shall for the purposes of salary and promotion be arranged in grades as designated in the Classification.'

"The position of social investigator, being in part I, is thus excepted from arrangement in grades for the purpose of salary. As to an ungraded position, an increase in pay cannot bring the new salary beyond any grade limit so as to effect a promotion."

The petitioners are entitled to the title of "Assistant Supervisor, Grade 2," *as that is the only title in existence for the positions held and the salaries received by petitioners.* Otherwise petitioners, whose positions as "Social Investigators" were stricken from the ungraded service, must be deemed to occupy positions for which there is no title. The protection in their positions and salaries to which they are entitled would be illusory indeed and subject to facile destruction if they were denied the title assigned, in the classification resolution of the commission, to positions in the social service carrying the salaries received by them. The very next budget of the city might make an appropriation for "Social Investigators, Grade 1," and for only as many "Assistant Supervisors" as shall have earned their title through promotion examinations and/or examinations for original entrance to that position, without making any appropriation for the positions occupied by petitioners. If this should occur, the latter would be deprived of positions and salaries which may not be adversely affected by a classification or reclassification of positions by a civil service commission. On the other hand, if petitioners are held to have the right to the title of "Assistant Supervisor, Grade 2," and the city's appropriation for that position should be inadequate to pay the salaries of all the persons possessing that title, as original incumbents or through promotion or original entrance examinations, petitioners would receive the protection of section 31 of the Civil Service Law, which provides that persons should be separated from the service for reasons of economy in the inverse order of original appointment in the service. (See, in this connection, *Matter of Wolfson* v. *Cruise*, 172 Misc. 577.)

The right of petitioners to the title of "Assistant Supervisor, Grade 2," does not depend upon whether or not they were performing supervisory duties at the time the classification resolution went

into effect. The fact that conferring upon those petitioners who may not have been performing supervisory duties the title of "Assistant Supervisor, Grade 2," might perhaps be regarded as improving their status is immaterial. In *Matter of Fornara* v. *Schroeder* (*supra*, p. 368) it was pointed out that classification of positions at times results in improvement of the status of the then incumbents, for example, by conferring upon a person in the exempt class, who had not passed a competitive examination, the " more secure " tenure of the competitive class into which his position was classified.

" It is not unheard of that persons appointed to a position in the exempt class should strive to render more secure their tenure by being classified into the competitive class. If legally appointed their tenure is not affected by a reclassification. (*Matter of Sugden* v. *Partridge*, 174 N. Y. 87.) "

Petitioners have the right to the title of " Assistant Supervisor, Grade 2," regardless of whether or not they were performing supervisory duties at the time their ungraded positions as " Social Investigators " were stricken from the ungraded service and the title of " Assistant Supervisor, Grade 2," assigned to positions in the social service carrying the salaries received by petitioners.

Up to this point the question presented for determination has been considered on the assumption that the reclassification resolution, which went into effect on December 2, 1938, made no express provision whatsoever regarding the then existing " Social Investigators." The respondents point out, however, that the resolution expressly made it a condition of the reclassification that " all persons of the title of ' Social Investigator,' who are affected by this resolution, *shall continue in such title with* salaries, present duties and *status unaffected and unimpaired by this reclassification."* (Italics supplied.) This language, in effect, excludes those persons who were serving under the title of " Social Investigator " at the time of the resolution from the scope of the reclassification by making it a " condition " of the reclassification that then existing " Social Investigators " shall continue in that " title " and in their existing " status." In using the word " status " the commission presumably intended to apply to their position in the ungraded service. In other words, the commission, though striking the position of " Social Investigator " from the ungraded service and transferring it to the graded service, which was reclassified at the same time, attempted to deprive the then incumbents of the position of " Social Investigator " of the benefits of the reclassification. This the commission had no right to do (*Matter of Fornara* v. *Schroeder, supra; Matter of Sandford* v. *Finegan, supra; Matter of Kinsella* v.

*Kern, supra*), as the protection in their existing positions and salaries to which the then incumbents were entitled would be seriously jeopardized if they were left in the ungraded service, under their old titles, side by side with persons chosen from promotion or original entrance lists to fill positions in the new graded service. If, for example, a budgetary appropriation should be made only for those in the graded service and none for " Social Investigators " remaining in the ungraded service and receiving $1,800 or more per annum, the latter would lose their positions while newly appointed incumbents in the graded service, with the same salaries, would be retained. Even if the view be taken that by using the word " status " the commission did not intend to keep " Social Investigators " in the ungraded service, but only to deny such of them as were receiving $1,800 or more per annum, the right to the title of " Assistant Supervisor, Grade 2," the commission would be exceeding its authority. As previously pointed out, the " Social Investigators " receiving $1,800 or more per annum have the right to the new title of " Assistant Supervisor, Grade 2," which has been created for persons receiving such salaries and the commission may not by resolution deprive them of that right.

The attempt of the commission to except a specific group of *individuals, i. e.*, the then incumbents, from the *positions* or *titles* created by the reclassification is open to the criticism made in *Matter of Rooney* v. *Rice* (274 N. Y. 347) where the Court of Appeals said (at p. 352): " The resolution did not exempt the position; it exempted Fischer, who was then the incumbent of the office." The condition attempted to be imposed by the commission, viz., the exclusion of then existing " Social Investigators " from the scope and the benefits of the reclassification resolution, must be disregarded as invalid and the resolution read with the condition omitted.

The contention is also made by respondents that neither section 19 of the Civil Service Law nor any other statute or rule requires the Municipal Civil Service Commission to enter in its official roster the title of the position held by each employee in the civil service. Section 19 provides that " The official roster shall show opposite or in connection with each name the date of appointment, employment, promotion or reinstatement, the compensation of the position, the date of commencement of service, and date of transfer in or separation from service by dismissal, resignation, cancellation of appointment or death. In like manner the municipal commission of each city shall keep in its office an official roster of the classified civil service of such city, and shall enter thereon the name of each and every person who has been appointed to, employed, promoted or

reinstated in any position in such service, upon such evidence as it may require or deem satisfactory that such person was appointed to, or employed, promoted or reinstated in the service in conformity with the provisions of law and of the rules, and it shall be the duty of each appointing officer of such city to report to such municipal commission in like manner as is hereinbefore provided for reports from appointing officers to the State Commission."

Although there is no express requirement that the roster shall include a record of the position and title of each employee, a reading of section 19 as a whole would seem to indicate that the Legislature so intended. Section 19 requires each appointing officer of the State and city to report to the State or municipal civil service commission, as the case may be, not only the name of each person appointed or employed, but also " *the title and character of his office or employment,* * * * and the salary or compensation thereof, * * * *and such other information as the commission may require, in order to keep the roster hereinafter mentioned.*" (Italics supplied.) Evidently, the Legislature contemplated that information as to the title and character of each employee's position was part of the information required by the commission in order to keep its roster. If the roster were not to contain the title of the position of each employee, information as to his title and the character of his employment would obviously be unnecessary. The requirement that the official roster shall show opposite or in connection with each name the date of promotion indicates also that the roster is to contain a record of the title and position held by each employee in the civil service, since an entry as to an employee's promotion, without any statement as to the position from which or to which he was promoted, would be meaningless. Petitioners are accordingly entitled to the relief sought.

The motion is granted and the cross-motion to dismiss the petition for insufficiency is denied. As the request for permission to serve an answer is stated to be solely for the purpose of controverting allegations of petitioners that they were performing supervisory duties at the time the classification resolution went into effect, an issue which is immaterial, the request for leave to serve an answer is denied. Section 1293 of the Civil Practice Act provides that: " In the event of the denial of such application [to dismiss the petition], the court may permit the respondent to answer, upon such terms as may be just." No proper case for exercising the discretion conferred by this section in favor of defendants is presented. Settle order.