Jam:es Gibson, J.
Motion and cross motion for summary judgment in an action brought for declaratory judgment that the Adirondack Park Agency Act, constituting article 27 of the Executive Law (L 1971, ch 706), is constitutionally invalid to the extent that it impairs the powers of the Town of Black Brook "to adopt, amend and repeal zoning regulations” and "to perform comprehensive or other planning work relating to its jurisdiction” (Statute of Local Governments, § 10, subds 6, 7). The motions were finally submitted (CPLR 4213, subd [c]) on December 13, 1975.
The plaintiff, a landowner within the town, asserts that its land development project, permissible under local law, was frustrated by the regulations and implementing action of the Agency under the act which established it. Specifically, the complaint "demands judgment declaring that those Sections of Article 27 of the Executive Law, designated the Adirondack *491 Park Act, which restrict and limit the use of Plaintiff’s land and particularly Sections 805, 806, 807, 808, 809, 810 and 813 thereof, and the Plan and Map created pursuant thereto, void, invalid, and unconstitutional by reason of being a zoning ordinance and comprehensive plan, all in violation of the Constitution of the State of New York, Article IX, Local Governments, Sections 1, 2 (a), 2 (b) (1) and the Laws of 1964, Chapter 205.”
The basic conflict, if there be conflict, is that between the Adirondack Park Agency Act and the provisions of the Statute of Local Governments (L 1964, ch 205) granting to the town "the power to adopt, amend and repeal zoning regulations” (Statute of Local Governments, § 10, subd 6) and "[t]he power to perform comprehensive or other planning work relating to its jurisdiction” (Statute of Local Governments, § 10, subd 7).
The defendants argue, inter alia, that the enactment of the challenged provisions of the Adirondack Park Agency Act was authorized by the constitutional provisions (NY Const, art IX, § 3, subd [a]) that, except as expressly provided, nothing in the article "shall restrict or impair any power of the legislature in relation to * * * (3) Matters other than the property, affairs or government of a local government”; defendants asserting, of course, that the reach of the act far exceeds and transcends the scope of the "local” government matters referred to in subdivision (a) here quoted. It is argued, further, and as an incident of the constitutional provision, that the adoption of the Adirondack Park Agency Act was within the exclusory provisions of the Statute of Local Governments, reserving to the Legislature the power to enact any law, "notwithstanding the fact that it repeals, diminishes, impairs or suspends a power granted to one or more local governments in * * * [that] statute” (Statute of Local Governments, § 11) in the categories which are then listed, including "[a]ny law relating to a matter other than the property, affairs or government of a local government” (Statute of Local Governments, § 11, subd 4). From these constitutional and statutory provisions flow defendants’ corollary arguments that the concept and execution of the Adirondack Park Agency Act are matters of Statewide concern[1] and are of far broader scope than the "affairs or government” of the Town of Black Brook; and that, even on *492 the basis of area or demographic concerns, the act directly involves many municipalities and an aggregate territory extending far beyond the town boundaries.
It is helpful to recapitulate the opposing contentions in the admirably succinct fashion in which the parties themselves have outlined them. The claim of invalidity is summarized in an affirmation of July 21, 1975 as follows: "That inasmuch as the provisions of the powers created by Article 27 of the Executive Law (Adirondack Park Agency Act) clearly conflict with and constitute a repeal, diminishment, impairment and suspension of the powers granted to the Town of Black Brook by the Statute of Local Governments, Article 2, Section 10, subdivisions 6. and 7. to adopt, amend and repeal zoning regulations and to perform comprehensive or other planning work relating to the Town of Black Brook’s jurisdiction, and said Article 27 of the Executive Law was not enacted in compliance with the requirements of Article IX, Section 2, subdivision (b) (1) of the Constitution of the State of New York,[2] said Article 27 should be declared null and void as pleaded in the complaint herein.”
It is the State’s position, simply enough, as set forth in an affidavit of July 21, 1975, that the "enactment at only one legislative session * * * was lawful, proper and not in violation of the sections of thé Constitution and the Statute of Local Governments cited by plaintiff since, as a matter of law, the said Act relates to matters that far exceed and transcend the property, affairs or government of a local government.”
In measuring the scope and substance of the challenged provisions of the Adirondack Park Agency Act as against the constitutional interdiction of legislation "in relation to the property, affairs or government of any local government” otherwise than "by general law”[3] and as against the grant of power under the Statute of Local Governments "to adopt, amend and repeal zoning regulations” and "to perform comprehensive or other planning work”, the court concludes that the'act is a "general law” and, in any event, exceeds the scope and purport of the constitutional and statutory language, "property, affairs or government of any local government”, as employed in both the Constitution and the Statute of Local *493 Governments in defining exclusions from the powers of local governments and reservations thereof to the Legislature. It follows, then, that the act did not, under the Constitution, require "enactment * * * by the legislature with the approval of the governor at its regular session in one calendar year and the re-enactment and approval of such statute in the following calendar year” (NY Const, art IX, § 2, subd [b], par [1]).
The statement in section 801 of the act of legislative findings and purposes is informative. The park is found to be, in some aspects, "unique to New York” and of "national and international significance”. "Continuing public concern”, it is said, "clearly establishes a substantial state interest in the preservation and development of the park area” and obliges the State "to insure that contemporary and projected future pressures on the park resources are provided for within a land use control framework which recognizes not only matters of local concern but also those of regional and state concern.” It is further found that: "Local governments in the Adirondack park find it increasingly difficult to cope with the unrelenting pressures for development being brought to bear on the area, and to exercise their discretionary powers to create an effective land use and development control framework.” The "basic purpose” of the act "is to insure optimum overall conservation, protection, preservation, development and use of the unique scenic, aesthetic, wildlife, recreational, open space, historic, ecological and natural resources of the Adirondack park”; and its "policy” is to "recognize the major state interest in the conservation, use and development of the park’s resources and the preservation of its open space character, and at the same time, provide a continuing role for local government.” The statement concludes: "Accordingly, it is the further purpose of this article to adopt and implement the land use and development plan and to provide for the plan’s maintenance, administration and enforcement in a continuing planning process that recognizes matters of local concern and those of regional and state concern, provides appropriate regulatory responsibilities for the agency and the local governments of the park, and seeks to achieve sound local land use planning throughout the park.”
The preservation of the unique qualities of the Adirondacks has long been the State’s concern and the subject of its continued protection, under the Constitution; and that policy is too well known to require discussion.
*494 Area alone is not determinative, of course, but in evaluating "not only matters of local concern but also those of regional and state concern” (Executive Law, § 801), it must be noted that as against the limited bounds of plaintiff town, an area of six million acres is regulated by the act and this within 12 counties, 92 towns and 15 incorporated villages.
It was held in the landmark case of Adler v Deegan (251 NY 467, mot for rearg den 252 NY 574) that the then Multiple Dwelling Law (L 1929, ch 713), although applicable only within the City of New York, related to matters other than "the property, affairs or government of cities” within the meaning of the Home Rule provision (NY Const, art IX, § 2). The court noted (pp 472-473) that it had previously found (in Admiral Realty Co. v City of New York, 206 NY 110) that rapid transit legislation dealing with the railroads in New York City — and thus, superficially, a matter of city interest only — was of State-wide concern, and did not relate only to the "property, affairs or government of cities”. The concurring opinion of Judge Cardozo stated (p 491) the conclusion: "The test is rather this, that if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality. Measured by that test, this statute must prevail.” It is clear that the inhabitants of the City of New York, and of the State generally, are no less concerned with, and benefited by, the Adirondack Park Agency Act, and the exercise of the State’s police power underlying it, than were the inhabitants of the Town of Black Brook, and of the Adirondack region generally, with New York City multiple dwelling and rapid transit legislation.
The cases[4] enumerated in defendants’ memorandum as citing and following Adler (supra), and thus supporting, in principle, the validity of the enactment of the Adirondack Park Agency Act, are not convincingly distinguished in plaintiffs brief and will not be analyzed here; and plaintiff cites no decisional law to the contrary.
The defendants’ motion is granted to the extent that they *495 may have summary judgment: A. Declaring that the enactment of the Adirondack Park Agency Act (Executive Law, art 27), including in particular, but not limited to, sections 805, 806, 807, 808, 809, 810 and 813 thereof, and the adoption (pursuant to the provisions of said act) of the Adirondack Park Land Use and Development Plan and Plan Map were lawful and proper in that, as a matter of law, said act and said plan and map adopted pursuant to the act, relate to matters other than the property, affairs or government of a local government, and the enactment of said act, and the adoption of said plan and map, were not in violation of article IX of the New York State Constitution (Local Governments) (§§ 1, 2 subds [a], [b], par [1]) nor chapter 205 of the Laws of 1964 (Statute of Local Governments); and B. Declaring that the enactment of the Adirondack Park Agency Act (Executive Law, art 27) was not in violation of any of plaintiff’s rights under article IX of the New York State Constitution (Local Governments) (§§ 1, 2, subds [a], [b], par [1]) or chapter 205 of the Laws of 1964 (Statute of Local Governments).

. See, e.g., the statement of legislative findings and purposes at section 801 of the act.

. Requiring that a statute diminishing a power conferred by the Statute of Local Governments be adopted by successive Legislatures followed in each year by approval by the Governor (NY Const, art IX, § 2, subd [b], par [1]).

. Or by "special law” in cases not pertinent here.

. Floyd v New York State Urban Development Corp. (33 NY2d 1); City of New York v State of New York (67 Misc 2d 513, affd 31 NY2d 804); Metropolitan Transp. Auth. v County of Nassau (28 NY2d 385); Matter of Freedman v Suffolk County Bd. of Supervisors (29 AD2d 661, affd 25 NY2d 873); Bugega v City of New York (24 AD2d 151, affd 17 NY2d 606); Town of Brookhaven v Parr Co. of Suffolk (76 Misc 2d 378, mod on other grounds 47 AD2d 554); County of Orange v Metropolitan Transp. Auth. (71 Misc 2d 691, affd 39 AD2d 839).